IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:17-CV-31-BO

ROBERT SHEARER and wife MINERVA )
SHEARER, )
)
Plaintiffs, )
)
v. ) O R D E R
)
STATE FARM FIRE AND CASUALTY )
COMPANY, WILLIAM BROCK LONG, )
Administrator of the Federal Emergency )
Management Agency, )
)
Defendants. )

This cause comes before the Court on defendant Long's motion to dismiss. Plaintiff has responded, defendant Long has replied, and a hearing on the matter was held before the undersigned on December 6, 2017, at Elizabeth City, North Carolina. In this posture, the motion is ripe for ruling. For the reasons that follow, defendant Long's motion is granted and this action is dismissed.

BACKGROUND

Plaintiffs Robert and Minerva Shearer are residents of Dare County, North Carolina and at the time relevant to the complaint resided at a home in Kill Devil Hills which was insured under a Federal Emergency Management Agency (FEMA)-issued National Flood Insurance Program Dwelling form Standard Flood Insurance Policy (SFIP). Hurricane Irene struck the Outer Banks of North Carolina on or about August 27, 2011, causing substantial damage and flooding throughout Dare County. As a result of the storm, plaintiffs' home was flooded by waters from the Albemarle Sound. Plaintiffs timely submitted to defendants a proof of loss,

attaching invoices and estimates submitted by a licensed general contractor, McNair Inc., doing business as Outer Banks Heating and Cooling (OBHC) and also trading as Doctor Energy Saver. Invoices totaling $12,259.59 and $9,248 were paid by plaintiffs to OBHC and Doctor Energy Saver and plaintiffs were reimbursed for those amounts by defendants pursuant to plaintiffs' SFIP. The amounts paid covered replacement of plaintiffs' HVAC system and ductwork within the crawlspace as well as labor and materials associated with removal of all insulation, placement of seals in and around electrical and plumbing work, biochemical treatment of the crawl space, installation of new insulation between floor joints and foundation girders, cleaning of wood surfaces in and around the subfloor and foundation, and painting the same wood surfaces with a biochemical paint designed to stop fungal growth. Plaintiffs allege that neither their general contractor nor the FEMA adjuster recommended that the subfloor of plaintiffs' home be aerated and dried.

Plaintiffs allege that in July 2016, they noticed that the floor in their home was sagging and later discovered that the wooden girders painted by Doctor Energy Saver during the flood remediation process had rotted and were failing. Plaintiffs allege that the failure of their foundation system was due to the 2011 flood event and the actions of the general contractor taken immediately after the flood, which trapped the moisture from the floor into the wooden foundation of plaintiffs' home. Plaintiffs provided notice to FEMA of the damage, an alleged additional covered loss from Hurricane Irene, along with reports from an engineer and costs estimates for the repair. By letter dated July 7, 2016, FEMA denied the claim and advised plaintiffs of their right to seek administrative review of the denial. Plaintiffs did seek review, and the original denial was affirmed by letter dated October 31, 2016.

Plaintiffs filed this action on July 3, 2017, seeking a declaration that defendants are obligated to pay the cost of repairing damage to plaintiffs' home foundation system. Plaintiffs allege that at the time their home was damaged, they relied on the representation of the general contractor and the FEMA adjuster that the scope of work performed was consistent with industry standards and practices for floor remediation and restoration. A stipulation of dismissal dismissing defendant State Farm Fire and Casualty without prejudice was filed on July 25, 2017. Defendant Long (herein after FEMA), moved to dismiss plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on October 12, 2017. The government argues that plaintiffs' claim is barred by sovereign immunity and that plaintiffs have further failed to state a claim upon which relief can be granted.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The National Flood Insurance Program (NFIP) was enacted to "make[] federally subsidized flood insurance available in flood-prone areas and [] encourage[] states and localities to adopt land use policies and regulations that reduce the risk of flood damage." *Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 243 (4th Cir. 2007). The NFIP is governed by the National Flood Insurance Act and its implementing regulations and is overseen by FEMA. 42 U.S.C. §§ 4001-4129. In this matter, FEMA directly issued an SFIP to plaintiffs; the regulations also permit FEMA to authorize private insurance companies to issue SFIPs under their own name, commonly referred to as Write Your Own companies. The federal common law governs interpretation of federal flood insurance policies, and thus courts are to rely on standard insurance law principles to resolve disputes over coverage under an SFIP. *Studio Frames*, 483 F.3d at 244-45; *see also* 44 C.F.R. § Pt. 61, App. A(1), art. IX. Plain and unambiguous policy

language will be directly applied, and ambiguous policy language will be construed to the insured's benefit. *Studio Frames*, 483 F.3d at 245.

The SFIP issued to plaintiffs specifically provides that an insured "may not sue [the government] to recover money under this policy unless [the insured] ha[s] complied with all the requirements of the policy." 44 C.F.R. § Pt. 61, App. A(2), art. VII(R). The SFIP Dwelling Form, at issue here, also provides that FEMA will pay an insured for direct physical loss by or from a flood if the insured has, *inter alia*, complied with all terms and conditions of the policy. 44 C.F.R. § Pt. 61, App. A(1), art. I. An insured must submit to FEMA proof of loss within sixty days after the loss, unless that time is extended by FEMA. *Id.* at art. VII (J)(4).

The NFIP operates as a waiver of the government's sovereign immunity. 42 U.S.C. § 4072; *see also Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015) ("Because the NFIP puts at stake the government's liability, its regulations implicate sovereign immunity."). A waiver of the government's sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Sossamon v. Texas*, 563 U.S. 277, 278 (2011) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Thus, "strict compliance with the regulations is a necessary condition for waiver of sovereign immunity in [the NFIP] context." *Admiralty Condo. Ass'n, Inc. v. Dir., Fed. Emergency Mgmt. Agency*, 594 F. App'x 738, 740 (3d Cir. 2014).

The parties agree that the deadline for filing claims related to Hurricane Irene was extended by FEMA to January 23, 2012. *See also Greene v. Nationwide Mut. Fire Ins. Co.*, No. 4:13-CV-255-D, 2014 WL 6694049, at *3 (E.D.N.C. Nov. 26, 2014) (citing FEMA Bulletin W-11120, November 22, 2011). There is no dispute that plaintiffs' claim for $12,259.59 and $9,248 for damage caused by Hurricane Irene was timely submitted and paid. Plaintiffs' claim which is

5

at issue in this complaint, however, was not submitted until July 2016 – more than four years after the Hurricane Irene claims deadline has passed. Plaintiffs' claim is plainly outside the time for filing Hurricane Irene claims, and they have thus failed to comply with the requirements of the SFIP. Plaintiffs' failure to comply with the requirements of the SFIP results in a finding that the government's sovereign immunity has not been waived. *See DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 84 (1st Cir. 2013) ("compliance with the proof-of-loss provision serves as a 'condition[ ] precedent to a waiver by the federal government of its sovereign immunity.'") (citation omitted); *Admiralty Condo*, 594 F. App'x at 740.

Alternatively, plaintiffs have failed to state a claim upon which relief can be granted, as they have failed to comply with the requirements of the policy. The "failure to file a *timely* Proof of Loss is dispositive, and subsequent suit on the claim is barred." *Mason v. Liberty Am. Select Ins. Co., Inc.*, No. 3:08CV218-MW/EMT, 2014 WL 11511672, at *3 (N.D. Fla. Aug. 15, 2014); *see also Dogwood Grocery, Inc. v. S.C. Ins. Co.*, 49 F. Supp. 2d 511, 513 (W.D. La. 1999) ("[A] claim which has been adjusted and for which payment has been offered and accepted may [not] be resubmitted upon subsequent discovery of additional facts.").

In response to the motion to dismiss, plaintiffs contend that "the damage to their foundation did not even exist at the time of the deadline." [DE 19 at 11]. Plaintiffs contend that the damage they now seek to remediate is based upon the failure of their general contractor to dry the wood foundation during repair and by its negligent application of biochemical paint. Plaintiffs' contend that their claim is one for subrogation, and they contend that FEMA has the sole right to recover against a negligent contractor who received FEMA funds for flood remediation work. Plaintiffs argue not that they have filed a timely proof of loss, but that they are seeking a declaratory judgment that FEMA is obligated pay for the cost to remediate

OBHC's allegedly negligent flood-damage repair work and to pursue its subrogated rights against OBHC in state court.

The SFIP subrogation provision states in its entirety:

> Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

44 C.F.R. § Pt. 61, App. A(1), art. VII(S). The SFIP insures against direct physical losses by or from a flood, and direct physical loss is defined by the SFIP as "Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property." *Id.* at art III, A & art. II (B)(12).

Contrary to plaintiffs' theory, FEMA does not maintain subrogation rights for any loss caused by plaintiffs' contractor, as any damage to the insured property resulting from the contractor's alleged negligence would not be a direct physical loss covered by the SFIP. In other words, FEMA would maintain the right to stand in plaintiffs' shoes to recover from a third party that partly or totally caused the flood, not a third party which partly or totally caused damage to plaintiffs' home after the flood damage had occured. Plaintiffs' current claim is further excluded by the SFIP, which expressly excludes water, moisture, mildew, or mold damage that results from a failure to inspect and maintain the property after a flood recedes. 44 C.F.R. § Pt. 61, App. A(1), art. V(D)(4). Finally, even if the SFIP's subrogation provision were applicable in this context, the Court is unaware of any authority which would allow it to declare that FEMA *must* pursue its subrogation rights on behalf of the plaintiff in a state proceeding. *See also Scritchfield*

*v. Mut. of Omaha Ins. Co.*, 341 F. Supp. 2d 675, 682 (E.D. Tex. 2004) (National Flood Insurance Act does not provide for declaratory relief, and thus no case or controversy exists under the Declaratory Judgment Act, 28 U.S.C. § 2201).

Accordingly, plaintiffs' current claim was made well-beyond the time for making Hurricane Irene-related claims for loss, and the SFIP subrogation provision provides no basis for the relief which plaintiffs' seek. Dismissal of the complaint is therefore appropriate.

## CONCLUSION

For the foregoing reasons, FEMA's motion to dismiss [DE 14] is GRANTED and this action is DISMISSED in its entirety. The clerk is DIRECTED to close the file.


SO ORDERED, this _11_ day of January, 2018.


TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE